IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                   Case No. 06-40147-02-SAC

DEWAYNE CARR,

       Defendant.

MEMORANDUM AND ORDER

This case comes before the court on the defendant's amended[1] motion in limine to bar testimony from Ronald Redmond based on inconsistent or contradictory theories of prosecution in violation of due process (Dk. 39) and the defendant's amended[2] motion to bar the government from using any materials to which the defendant is entitled and which the government previously promised would be turned over fourteen

---

[1] The defendant filed this amended motion only to correct the mistaken reference to crack cocaine made in his prior motion in limine (Dk. 38).

[2] At the status conference on October 31, 2007, defense counsel explained that the amended motion simply includes more detail about its prior and current discovery requests.

days before trial (Dk. 47). The government has filed separate responses. (Dks. 45 and 49). At the status conference, the court denied the defendant's motion in limine (Dk. 39) and indicated an order would be filed setting forth the basis of its ruling.

**MOTION IN LIMINE (Dk. 39).**

The defendant asks the court for an order barring the government's witness Ronald Redmond from testifying about the defendant's ownership of the marijuana seized from the trunk of Redmond's vehicle during a traffic stop. The defendant believes it would violate his due process rights for the government to present as direct testimony at trial Redmond's statement as previously proffered to officers that of the 195 pounds of marijuana seized from Redmond's vehicle, 140 pounds belonged to the defendant Carr. The defendant considers this statement and expected testimony of Redmond in this case to contradict completely Redmond's testimony already given during the trial in *United States v. Tracy Smith*, No. 05-40065-01-RDR, that the seized marijuana belonged to him. The defendant contends the government offered in the *Tracy Smith* trial Redmond's testimony on his ownership of the marijuana in order to bolster Redmond's credibility but now wants to change its theory

and have Redmond testify that Carr owned the marijuana in order to obtain a conviction against Carr.  The defendant insists this would result in the government using factually contradictory theories amounting to a violation of due process.  *See Smith v. Groose*, 205 F.3d 1045, 1052 (8th Cir. 2000).

The government responds that Redmond did not testify in the *Tracy Smith* trial to owning the marijuana exclusively and that Redmond was never asked during the trial to identify who else had an ownership interest in the marijuana.  The government quotes from Redmond's testimony during the *Tracy Smith* trial, an excerpt not cited in the defendant's motion, where Redmond acknowledges that he was cooperating against people "with" whom he had trafficked marijuana and against people "for" whom he had "haul[ed]" cocaine. (Dk. 45, Exh. A, p. 31).  In the government's judgment, Redmond's testimony when properly read and construed as a whole is not that he exclusively owned the marijuana and was solely responsible for it.  Indeed, Redmond was never asked those questions during the *Tracy Smith* trial.  But in his debriefing for the instant case, Redmond identified his co-conspirators and their respective ownership interests of the seized marijuana and advised that his

fingerprints and those of his co-conspirators would be found on the drugs. According to the government, the defendant's fingerprints were recovered from the marijuana packaging materials.

The defendant relies principally on *Smith v. Groose*, 205 F.3d 1045 (8th Cir.), *cert. denied*, 531 U.S. 985 (2000), which decided "whether the Due Process Clause forbids a state from using inconsistent, irreconcilable theories to secure convictions against two or more defendants in prosecutions for the same offenses arising out of the same event." 205 F.3d at 1049. The Eighth Circuit observed that due process would "cast into doubt a conviction obtained by a prosecutor's knowing or reckless use of false testimony" and that other circuits "have recognized that inconsistent prosecutorial theories can, in certain circumstances, violate due process rights." *Id*. at 1049-50 (citations omitted).

In *Smith*, the court found a due process violation when the prosecution in the defendant's trial used a witness's statement as to when the murder occurred but in the co-defendant's trial the prosecution used the same witness to testify that the murder occurred at a different time. "[W]hat the State claimed to be true in Smith's case it rejected in [the co-defendant's] case, and vice versa" so that the state was able to prove in

two separate cases that the same murder occurred at two different times. *Id.* at 1050. This "testimony constituted the only evidence of when the murders occurred and was the sole basis for two different convictions on two contradictory theories." *Id.* at 1051.  The court concluded that "[t]he State's use of factually contradictory theories . . . constituted 'foul blows.'" *Id.*  The court summarized its holding in this way:

> We do not hold that prosecutors must present precisely the same evidence and theories in trials for different defendants.  Rather, we hold only that the use of inherently factually contradictory theories violates the principles of due process.  For example, the passage of time between trials, such as the four months' time between Smith's trial and [his co-defendant's], may be a legitimate excuse for minor variations in testimony or defects in memory . . . .  In Smith's case, however, the relevant variation was neither minor nor found in the testimony at trial.
> Smith's situation is unusual, and we doubt that claims such as his will often occur. To violate due process, an inconsistency must exist at the core of the prosecutor's cases against defendants for the same crime.  In the present case, the State's zeal to obtain multiple murder convictions on diametrically opposed testimony renders Smith's convictions infirm.

205 F.3d at 1052.

This court does not believe that the government's use of Redmond's anticipated testimony in this case involves the kind of "inherently factually contradictory theories" or "prosecutorial" inconsistencies that "exist at the core of the prosecutor's cases" as were

5

present in the Eighth Circuit's decision in *Smith*. Redmond's testimony in the *Tracy Smith* trial about his ownership of the marijuana did not go to the core of that prosecution or even to the core of the prosecution against Redmond. Nor must one understand Redmond's testimony in that trial to be inherently factually contradictory with his proffered debriefing here. While Redmond said he was selling marijuana and agreed that he had went to Arizona to pick up his "own load of marijuana," Redmond never was asked whether he was solely responsible for marijuana seized from his car or whether any one else owned some part of the marijuana. Instead of testifying that he was solely responsible for the marijuana, Redmond explained that pursuant to an agreement with the government he was providing information against others with whom he was trafficking drugs, including persons "with" whom he was trafficking marijuana. (Dk. 45, Ex. A, p. 31). The court does not consider Redmond's trial testimony to be diametrically opposed to his statements during the debriefing. In short, the prosecutor's use of Redmond's anticipated testimony does not implicate the due process concerns argued by the defendant.

**MOTION TO BAR (Dk. 47)**

The defendant filed a motion for production of *Brady* and *Giglio*

evidence back in May of 2007. (Dk. 20). In light of the government's response that it had produced "a great deal" of the requested materials and that it would continue to supplement its disclosures, (Dk. 23), the court denied the defendant's motion. (Dk. 24). The defendant filed a motion to reconsider asserting in part that to date the government had produced "very little *Brady* or *Giglio* material." (Dk. 26). The court denied the defendant's motion. (Dk. 30). The defendant now moves to bar the government from introducing any requested materials, in particular *Brady* and *Giglio* evidence, which the government has promised to produce fourteen days before trial. (Dk. 47).

Because the defendant filed his motion just before the status conference on October 31, 2007, the court directed the parties to confer and the government agreed to file its response on November 1, 2007. The government timely filed its response indicating that the parties had conferred, that additional matters were disclosed and will be disclosed, that certain other requested items do not exist, and that the government is mindful of its ongoing duty under *Brady* and *Giglio*.

The defendant's motion essentially asks the court to enter an order granting broad anticipatory relief for a discovery violation without

regard for circumstances that could be argued as relevant later. The court is not inclined to grant such relief. The defendant's motion led the government to revisit its duties under *Brady* and *Giglio* and preserved the defendant's objection to any subsequent discovery violations on the government's part. The court is satisfied with the government's response at this juncture.

IT IS THEREFORE ORDERED that defendant's motion and amended motion in limine to bar testimony from Ronald Redmond based on inconsistent or contradictory theories of prosecution in violation of due process (Dks. 38 and 39) are denied;

IT IS FURTHER ORDERED that the defendant's motion and amended motion to bar the government from using any materials to which the defendant is entitled and which the government previously promised would be turned over fourteen days before trial (Dks. 46 and 47) are denied.

Dated this 5th day of November, 2007, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge